The second case in which we'll hear number 2008-5057, Walton v. United States. Mr. Wiedenthaler, did I pronounce it correctly? Yes, that's correct. I want to make sure I have the pronunciation correct. And just, I know you're familiar with the lighting system, but I just want to check, you've reserved five minutes for rebuttal? That's correct, Your Honor. Okay, well you can begin whenever you're ready. Thank you, Your Honor, and may it please the Court. This case involves a narrow limitation on the broad right of action against the government for copyright infringement pursuant to section 1498B. The main issue in the case is whether a proviso in that section draws a distinction between the term employment and the term service. There is no distinction drawn by the statute for several reasons. What do you think the word, is it your position the service is just the same thing as employment? The term employment has been construed by the Supreme Court in CCNV v. Reed by turning to agency principles and the definition of servant in order to interpret what the word employee means or what the word employment means in the context of the statute where the Congress does not provide a different definition, brought the term employment in section 1498B to have a coextensive meaning, or at least to borrow Your Honor's phrase from the earlier argument, a distinction that is so technical that it has no meaning in this case. But it must mean something. In other words, as I understand the way the statute developed, this phrase employment or service originally appeared in the provision dealing with suits against the government for patent infringement. That's correct, Your Honor. And then it was subsequently, a parallel provision was enacted covering suits against the government for copyright infringement. Correct. And both, in the second one, Congress adopted the same language that it used in the first one. So it seems to me, under well-settled principles of statutory interpretation, the word service must mean something other than employment. And I wonder, what do you think the word service means in that context? Service, I think, relates to the definition of servant under agency law. And that is the concept that comes to mind when someone sees the term service. And in this case, the Supreme Court has held that the same standard applies to the term employee. And that is why we submit that there is no distinction between employment and service in the context of the statute. For example, people speak of someone being in military service. That's correct, Your Honor. That is correct, although the sheer case to which the government points actually held that a serviceman who was a government conscript, had not volunteered for the Army, had been drafted into the Army, was nevertheless an employee under the predecessor to the work for hire statute, which has been at issue in this case. It involved the predecessor statute, but the court held there that even though the person was a serviceman who did not satisfy traditional employment principles, would not ordinarily be an employee. In the context of the copyright law, the serviceman was held to be an employee. Well, if a conscript in the military is an employee, then why isn't a prisoner working in the prison industry an employee? What's the difference between the two, other than the conscript is paid a little more? The difference is that there is a large body of law saying that prisoners are not employees. Tell me what's the difference between the two in a way that really matters and makes the distinction between the two sensible. The distinction is that a prisoner is acting in an entirely involuntary manner. Well, the conscript, let's assume that the conscript was drafted against his, it would have to be his will, and is being told by his superior officers exactly what to do. Why is that materially different from a prisoner? The distinction is that not only that the serviceman is given paid a slightly greater wage, the serviceman has a lot more authority over how he or she goes about his work. Well, it depends. The serviceman may or may not. I mean, I was drafted in World War II. When I came in and the sergeant or the corporal told me to do something in a particular way, I'd better well do it if I didn't want to end up in the guardhouse. So, I don't understand the distinction. It seems to me someone who's drafted a conscript is just as much under complete control as a prisoner. And again, I didn't know for how long I was going to be in there. I mean, the prisoner at least knows he's in there for three years and then he can get out. I didn't know during World War II how long I'd be in there. I was in for 41 months, but I could have been in for 48 or 60, I suppose. Prisoners are given different, have fewer rights than servicemen in a number of areas. Your Honor likely was given leave at some point. Prisoners do not have the opportunity to take leave. They are given veterans' benefits for their service to their country. Prisoners are not given benefits for their service to the prison. There are no prisoners' benefits as such. That's correct, Your Honor. There's no separate prisoners' benefits law and that is the distinction. Is it fair to say, do you think, that when Congress used the word service, what it was seeking to cover were people who had, in the colloquial sense, who were working for the government, even though their relationship might not have met the standards, the traditional employee, employer, or master-servant standards of common law? There's no indication of that, Your Honor, in the legislative history. In fact, the legislative history, when it refers to these provisions, shortens the phrase every time it appears to employees, referring only to employment or employees. It just shortens it. It was only talking about employees. The government suggests that there's a distinction drawn in the statute in various ways between what happens to employees and what happens to this other category. That's right, Your Honor. When describing in the Senate report and the House report, for example, what these provisos mean, the Senate and House report both say that it applies to government employees, and they do not say it also applies to a separate category of government servants. There are certainly, well, it depends on how technical you want to be, I guess, but there are certainly, typically, officers of the United States are distinguished from employees of the United States. I mean, I suppose that one could say that none of the three of us, for example, are employees of the United States, but we're certainly in the service of the United States. Wouldn't you agree? Your Honor, I would not agree to back up to the initial premise of your question. Under the Copyright Law, under 17 U.S.C. Section 101, the term officer is generally construed as being coextensive with employee, and there's no distinction drawn in the Copyright Law. But a constitutional officer is, you would say, an employee. Under the Copyright Law, that is the way that term has been construed, and therefore, I would have to disagree that there's a separation between employment and service for a similar reason, Your Honor. Let me ask you, let's take the creative activities that were performed by Mr. Walton here, and let's assume that rather than he performing those activities, the very same activities were performed by someone, say, who was a volunteer for the Smithsonian Institution or the National Gallery or something like that. Is that sort of a person, an employee, or are they in service? Again, just a volunteer. They go down there four days a week, they're interested in art, and they do what Mr. Walton did, albeit in a different setting. Certainly, Your Honor. The difference in the volunteer situation is that the traditional agency principles can apply to that situation because the volunteer has assented to be in that role. Therefore, the CCNV factors could be applied to that situation, and it would be a case-by-case situation evaluating the CCNV factors to determine whether that particular volunteer qualifies as an employee or was acting more as an independent contractor. To turn to the CURE point, while I still have some time remaining, the government draws a distinction between relation back and CURE, and our understanding of the statute, of the CURE doctrine, is that by CURING, it necessarily relates back. This court held in black that a supplemental affidavit that was submitted after the statute of limitations had run satisfied the CURE doctrine, which is directly opposed to what the government here is arguing. If there are no further questions, I'll reserve the remainder of my time. Thank you. We'll hear from the government. Mr. Hilton? May it please the Court, I'm Robert Hilton, representing the United States. Mr. Gary Houskin of counsel is at the table with me, and the other of counsel, John Fargo, is sitting behind the bar. First, I'd like to discuss the scope of the phrase in the service of the United States in the Second Proviso of 1498B. Three of the most important rules of statutory construction indicate that service would include a federal prison inmate working in the federal prison industries, even if he's not deemed to be an employee under CCNV v. Lee. The first rule is the cardinal rule of statutory instruction, that each word in a statute, if possible, is given meaning, and since the proviso already uses the word employee, that would create the presumption that, if possible, service would include more than just employees under the CCNV case. And a larger scope of service would support the notion that a prison employee working in the prison industries would be in the service of the United States, even if he's not deemed to be an employee under CCNV v. Lee. Suppose instead of being a prisoner, this man, Mr. Walton, had been a civil employee of the Bureau of Prisons and did the identical thing. There isn't much doubt, is there, that he couldn't sue the government for copyright infringement. He'd be clearly an employee. Correct. One may be either an employee or in the service to satisfy that condition. And I suppose then the question is, why should the result be any different because he was a prisoner rather than an employee? Well, my first point was assuming he's not an employee, and I intend to get to that in a minute, whether or not he actually was an employee, because, as you know, it is our position. I understand that the cases that have held prisoners not to be employees all arose under different statutes. There was one case in which the prisoner was seeking to get minimum wages for the work he was doing in the prison, and they said, well, he's not an employee. An employee is a very broad concept that could well have different meanings, I suppose, under different statutes. The word employee doesn't have to mean the same thing under every statute. Under the National Labor Relations Board, someone who is a supervisor is not treated as an employee, whereas I assume under someone who is assistant chief of a section in the Justice Department would still be considered an employee of the United States, even though he's a supervisor, even though he might not be an employee under the National Labor Relations Act. That's correct. Under the Fair Labor Standards Act or the Civil Rights Act, we have case law saying how one determines whether a person is an employee or not. But in this case, one has to go to the Supreme Court case, CCMD v. Reed,  and in our view, the better view is to consider him to be an employee. The Court of Federal Claims did run through the 13 CCMD factors and found that if one applied them, he would be an employee, but declined to say that Mr. Walton was an employee because he was not there voluntarily, and the Court of Federal Claims openly disagreed. Are there any presidential opinions, either of this court or some other court, that determine the meaning of employee under this statute or under the parallel patent statute? The only two cases of which we are aware are the one that's being appealed today and the North Carolina license plate case, McKenna v. Lee, where the prisoner designed the first white license plate. In McKenna, of course, he was found to be an employee applying the CCMD v. Reed case, and our view is that the better view is to disregard whether or not he was there involuntarily because the prison statutes require that prisoners do work, and the FPI Unicor statute specifically says you will give him employment that is as much as possible like the employment that's on the outside. And this is for the benefit both of the prisoner and society as a whole so that when he gets out, he'll understand how things are to earn an honest living. And in a print shop on the outside or in a graphic shop on the outside, under the copyright statute, presumably the employer gets the title to anything he tells one of his employees to do. And so in view of the prison statute and in view of the fact that says he's to be an employee and in view of the fact that he's supposed to benefit from this statute, we think the better view is to disregard the fact that he's there involuntarily and to find him to be an employee as was done in the Kenner v. Lee case. Rather than hang our hat on in service. Well, these are alternative. The court could find... It seems to be you're saying, you're suggesting, I think Mr. Hilton, correct me if I'm wrong, that your first line is that Mr. Wald was an employee and then your next preference would be to have him viewed as being, quote, in service, close quote. Well, actually, I presented it the other way around, but it's up to the court, of course, to decide. Just to try to understand how broad your proposed definition of employee is, you would include, well, what would you do with volunteers? Well, a volunteer, one would have to go through the CCNV test and I don't know that I can think of all the hypotheticals that are out there, but I think it would be easy to... Well, I guess where I'm going with that is if someone is performing work pursuant to direction of an entity, is one, within the meaning of the copyright statute, employed by that entity or does there have to be either some kind of contractual obligation on the part of the would-be employee or some kind of compensation? Well, in the CCNV, the question was, Mr. Reed was directed to make this statute. So there was direction there, but one has to go through all the 13 factors and, of course, in that case, the Supreme Court said, well, if you go through the factors, Mr. Reed is a contractor and not an employee. So going back to your hypothetical, I think the law is that you really have to apply CCNV to the facts of the case. So you basically take the same position as Mr. Wiedenfeller does on the situation of a volunteer. You both seem to say you have to apply the CCNV factors. I think that's what the law is. And I suppose in the case of a volunteer, some might be given considerable discretion in how to do their work and others might be told exactly what they have to do every minute that they're there, and that might conceivably make a difference. It could, because in CCNV, the right to control is probably the most important factor, more equal than the other factors, if you will. I would like to go back to the issue of service and the two other statutory principles that would indicate that service would be broader than employee. One is you look to the context. Either broader or different. Different. It would cover something that employee wouldn't. And the rule I'm referring to is that you look to the context of a word in a statute to help you determine the meaning of the word in the statute. And the word service appears in the second proviso next to the word employment, employment or service. But if you go to the first proviso in 1498, it only refers to employees, an employee who's in a position to induce the use of the work. So that suggests that the drafters of 1498 be intended there to be a different and actually greater scope to the second proviso, because it says employee in the employment or service. And the third rule of statutory construction has to do with waivers of sovereign immunity. This is a waiver of sovereign immunity. And waivers are strictly construed in favor of the government. And if there's a reasonable interpretation that's broader and narrower, you construe the waiver more narrowly. And that would also urge that the word employment be given, or the word service be given some meaning different from employment. Well, there's nothing at all is there in the history of this statute that even suggests that Congress intended to permit prisoners to sue the government for copyright infringement for things they developed while working in prison. No, Your Honor, there's nothing that would suggest that's what Congress intended. In fact, you could even look, as I referred to earlier, to the federal prison industry statute itself. It said, you're supposed to be like an employee. And that would almost suggest that there's an affirmative decision not to give him the right to sue. And I would like to say, in addition to the legal principles, there is a real-life distinction between service and employment. It was pointed out in the Schur case, even though the Schur case dealt with the earlier version of the copyright law, we referred to it to point out the real-life difference between service and employment. Schur was the Army draftee. And I suppose you would say that without attempting to define the outer limits of what the term service means, it's broad enough to cover the prisoners. Correct. We also feel that the broader interpretation of service is the most consistent with the apparent purpose of this proviso. The proviso refers to time, materials, and facilities. That's one of the second conditions that needs to be met in order for the proviso to apply. And what time, facilities, and materials have in common is that they're all forms of capital. And generally, in our experience in life, if somebody devotes capital to the production of something, they expect something in return. And in the case of expending capital to produce something copyrightable, that something would be at least free use of whatever it is that was developed using that capital. And so the word service would serve the purpose of the apparent intent of this statute. The last thing I'd like to discuss is whether the plaintiff's supplemental complaint can relate back to the date before his application for copyright registration. And we rely on Black v. HHS. We need not reach that unless we reverse the first point. Correct. If the court affirms on either the word service or employment, this issue need not be addressed. In Black, it was a vaccine case where there was a threshold condition at the time in the vaccine law that the plaintiff had incurred $1,000 worth of costs that were not reimbursable by something else. And there were supplemental pleadings that were added after the statute of limitations period. And the holding in Black is that a supplemental pleading cannot do what a timely pleading could not have done. And so the bottom line of Black is that an amended pleading cannot relate back to a time before all of the threshold facts were true, to the first time that all threshold facts were true. In the present case, there is a threshold criterion under the copyright law, Section 411, that there be at least an application for copyright registration for the accused work, and it has to be pleaded. And applying the Black rule to this case, where the copyright registration came into existence in April 2005, an amended pleading, actually it would be a supplemental pleading, but it was called amended pleading, cannot relate back to before that date. And for the reasons stated here and in our briefs, we urge that the judgment of dismissal be affirmed. Thank you. Mr. Wendell, you have your rebuttal. Thank you, Your Honor. I'd just like to address the government's point that, the government's argument that we're failing to give meaning to the separate words employment and service in the statute. And that's simply not true. Here, the terms have just been construed by the Supreme Court as bearing very, very similar meanings, and there's no distinction that applies in this case. We're not reading out the words or service from the statute. We recognize that they're there. But our argument is that employment and service bear the same meaning, at least as it relates to this case. Turning to Judge Friedman's question about whether an employee of federal prison industries could have sued the government for copyright infringement, Your Honor is correct that an employee could not have. And the various statutes to which we point are in a separate area of law. This is an issue of first impression as far as we are aware. But there's no reason to create a separate copyright doctrine where prisoners are employees under copyright law, even though they're not employees under the Clean Air Act, the Toxic Substances Control Act, the Fair Labor Standards Act, or Title VII. There's no reason to create a special copyright employment doctrine that is distinct from the employment doctrine throughout the remainder of the U.S. Code. Third, I'd like to point out that the CCNV factors to which the government points simply can't apply in this case. They're factors that are based on an agency relationship. The touchstone of an agency relationship is assent. It's in Section 1.01 of the third restatement and in Section 1 of the restatement that consent or assent is necessary to the formation of an agency relationship. With no consent here, an agency relationship can't apply. So the Reed factors, which are based on agency law,  Since you've invited the question, let me ask you one. On that point, and I may need some help from you in clarifying exactly what your position is on the non-consent. And here's my problem with the broad statement, as you articulated, perhaps in a shorthand fashion, is that if you have, for example, a conscript who's driving around in a truck and runs down some civilian outside the base, let's say, that I would think that the master and that master-servant relationship would be liable under master-servant principles, notwithstanding that the conscript was not there voluntarily and was not driving the truck voluntarily. Wouldn't that be so? The government may take on that liability. It would seem to me that under, where I'm going with that, is under general agency principles, it may be certain things that are true with respect to agents would not apply to the non-consensual types of relationships. But certainly there would be many respects in which agents or people who are acting at the direction of others would nonetheless be deemed to be agents, right? Such is my example. Yes, Your Honor. There are situations where the government might take on the liability. I certainly don't think that the court would like to suggest that prisoners are acting as agents and can bind the United States through their actions. Actually, I suppose the United States could authorize a prisoner to bind the United States. I mean, it would require authorization. But even, again, you could authorize a conscript to bind the United States in certain settings, I would think. The fact that he's a conscript doesn't disable the master, in other words, from conferring upon that actor the actual authority to bind the principal, right? Certainly, although looking just at the relationship, agency might not apply, but the actual authority could have been granted to bring it within agency. That would be the distinction. Okay, I think I see. Will you finish with your argument? Yes, Your Honor. I know that you're here in a pro bono capacity, correct? Yes, Your Honor. Well, thank you. I want to, on behalf of the panelists, as I did in the previous case, thank you and your firm for the assistance in this. It's always very helpful to get, you know, coherent briefs in cases. And, you know, quite frankly, it's often not possible for someone in Mr. Walton's position to be able to present that. So thank you. And, Mr. Holman, thank you also for a very, very helpful argument. The case is submitted. Thank you. The oral argument today is number two.